# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

KEVIN CALLAHAN, RICHARD B.
FRANCO, NOEL JOHNSON, JORGE
FERNANDEZ, TOM REINHART,
MANUEL DURAN JR., RALPH
SALAZAR, PRESTON LITTLE,
JASON BOUST, MICHAEL SIMS,
ROBERT MILLER, TY TASHIRO,
RAMIRO GARZA, ANGELA
YAMBUPAH, DANIEL SILVA, FRED
SANDERS, STEVEN GAUCIN,
GREGORY VELASQUEZ, ABRAHAM
RUIZ, JOSE SOTO, BRANDON
COLES, REYES CARRILLO, ROBERT
THEILE, ERIC GRIJALVA, JEFF BISE,
BRAD FUNK, ROBERT PALKOWNIK
and KEVIN MCINERNEY,

        Plaintiffs,

    vs.

CITY OF SANGER, and DOES 1
THROUGH 10, inclusive,

        Defendants.

_____/

Case No. 14-cv-600-BAM

ORDER RE: CROSS-MOTIONS FOR
SUMMARY JUDGMENT

(Docs. 27 and 28)

## I.     Introduction

Pending before the Court is Kevin Callahan, Richard Franco, Noel Johnson, Jorge Fernandez,

Tom Reinhart, Manuel Duran Jr., Ralph Salazar, Preston Little, Jason Boust, Michel Sims, Robert

Miller, Ty Tashiro, Ramiro Garza, Angela Yambupah, Daniel Silva, Fred Sanders, Steven Gaucin,

Gregory Velasquez, Abraham Ruiz, Jose Soto, Brandon Coles, Reyes Carrillo, Robert Theile, Eric

Grijalva, Jeff Bise, Brad Funk, Robert Pulkownik, and Kevin McInerney's  ("collectively "Plaintiffs")

1

Motion for Partial Summary Judgment, or Alternatively, Summary Adjudication of Issues (Docs. 27, 32, 41) and the City of Sanger's ("Defendant" or "the City") Cross-Motion for Partial Summary Judgment, or Alternatively, Summary Adjudication of Issue.[1] (Doc. 28, 31, 42). The Court held a hearing on April 24, 2015, and took the matter under submission. Upon a review of all of the pleadings listed above, Plaintiffs' motion is GRANTED AND DENIED IN PART. Defendant's cross-motion is GRANTED AND DENIED IN PART.

## II.     Summary of the Parties' Positions

This is a federal wage and hour case that is proceeding on a First Amended Complaint filed on November 3, 2014 ("FAC") which alleges violations of the Fair Labor Standards Act ("FLSA"). (Doc. 22). Plaintiffs are twenty-eight non-exempt hourly employees of the City of Sanger. Under the FLSA, employers are required to pay their non-exempt employees overtime for the hours worked in excess of forty hours at a rate that is one-and-a half times the employee's "regular rate." 29 U.S.C. § 207(e).

The issue is what items of payment are remuneration for work performed and therefore must be included in the regular rate of pay used in calculating overtime. Plaintiffs allege they do not receive full compensation in violation of 29 U.S.C. § 207 because Defendant does not include all of their compensation in their regular rate. Plaintiffs allege that by miscalculating the regular rate of pay, Plaintiffs' overtime rate of pay likewise is miscalculated. Specifically, Plaintiffs contend that Defendant fails to include merit pay raises and health benefit reimbursements, received in lieu of taking health benefits, into the employee's regular rate calculation, which in turn lowers the employee's overtime pay rate.[2] Additionally, the City allows employees to accrue compensatory

---

[1] The parties have consented to magistrate judge jurisdiction. (*See*, Docs. 10 and 12).

[2] Health benefits reimbursement is described in Section IV. See Fact no. 6, *infra*.

("comp") time when overtime is worked.  This compensatory time is stored and is either cashed out or utilized as time-off.  When the City cashes out the comp time, it does not include merit pay raises and health benefit reimbursements in the overtime rate.  Plaintiffs argue that these practices violate the FLSA.  Plaintiffs seek declaratory and injunctive relief and request an order enjoining the City from committing further violations.  They also seek liquidated damages pursuant to 29 U.S.C. § 216(b), and attorney's fees.

Defendant argues that it has complied with the FLSA because the types of compensation complained of by Plaintiffs are exempt from the regular rate of pay.  The payments made in lieu of health benefits are excludable under 29 U.S.C. § 207(e)(2), or alternatively, under 29 U.S.C. § 207(e)(4).  Similarly, merit pay raises are discretionary and are exempt pursuant to 29 U.S.C. § 207(e)(3).  Consequently, all regular pay and overtime calculations are proper.

In the event that the Court finds any violations, the City contends that a Memorandum of Understanding ("MOU") between the City and Plaintiffs establishes a law enforcement exemption under 29 U.S.C. § 207(k) ("207(k)" or "7(k)" exemption).  Under this exemption, any previously paid overtime should be used to off-set any damages incurred. The City argues that a two-year statute of limitations applies. Additionally, if the Court finds that a Section 207(k) exemption exists, the City asserts that it is entitled to an offset over time already paid and that any offset should be calculated based on a two-week pay period, as identified in the MOU.

In response, Plaintiffs argue that the City has not met its burden of demonstrating that any of the exemptions under the FLSA apply.  Plaintiffs argue there is no evidence of a 207(k) exemption.  They also contend that the Defendant's actions are willful violations of the FLSA because Plaintiffs attempted to resolve these issues with the Defendant informally in October 2013, but the City did not respond.  After this lawsuit was filed, the City began including merit pay raises in the regular pay computation in August 2014, but the City continues to refuse to include any health benefit

reimbursement.  Based on the alleged willful violations, Plaintiffs seek enhanced damages for three years prior to the filing of the complaint pursuant to 29 U.S.C. § 255(a).  Finally, Plaintiffs argue that any damages should be calculated on a work-week by work-week calculation.

### III.     Legal Standard

Summary judgment is appropriate when it is demonstrated that no genuine issue as to any material fact exists, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Under summary judgment practice, "the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catret*, 477 U.S. 317, 323 (1986).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.*  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Id.* at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

Cross-motions for summary judgment do not necessarily permit the judge to render judgment in favor of one side or the other. *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir.1975).  In resolving cross-motions for summary judgment, the Court must consider each party's evidence.  *Johnson v.*

*Poway Unified School Dist.*, 658 F.3d 954, 960 (9th Cir. 2011).  Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  Defendant does not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case.  *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless*, 509 F.3d at 984 (quotation marks and citation omitted), it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

## IV.    Undisputed Material Facts ("UMF")

The parties have stipulated that certain facts are undisputed as follows:

1. Plaintiffs are, or were at relevant times, 28 full-time, non-exempt hourly employees of the City of Sanger. All Plaintiffs, except for Richard B. Franco, are sworn peace officers. Franco is employed as a non-sworn records clerk.  Defendant is the City of Sanger, an incorporated municipality within the State of California.  (Joint Statement of Undisputed Facts ("JSUF") (Doc.  27-2, ¶1).

2. As employees of the City, Plaintiffs are entitled to receive a benefit called "merit pay" which is a 5% salary increase to base pay included in an employee's regular pay check. (*Id*. at ¶ 2).

3. Since 2007, up until August 2014, the City has not included this merit pay in the Plaintiffs' overtime rate, or regular rate of pay.  The City did not start including merit pay in the regular pay rate until August 23, 2014. (JSUF, Doc. 27-2 ¶ 3; Doc. 28-3, ¶ 3).

4. A MOU between the City of Sanger and the Sanger Police Officers Association was in place during the relevant time.  (Doc. 28-3, pg. 2 ¶ 1).

5. With regard to merit pay, Article 13 of the MOU states as follows :

5

Effective January 1, 1998, a five percent merit step will be available to base pay for all represented personnel, sworn and unsworn.  Merit increases can be applied at any step within the range, at any time as determined by the Chief of Police, and will be valid for one year from receipt of the increase.

Merit raises are renewable annually upon recommendation of the Chief of Police, and for personnel satisfactorily meeting the eligibility requirements for such increases.

A committee will be established by the Chief of Police, with the approval of the city manager, to develop criteria which will be utilized for determining eligibility for merit increases. (Doc. 28-4, pgs. 15-16; Doc. 32-2, pgs. 15-16).

6.   In addition to merit pay, the City offers a "Health Benefit Program" to all full-time City employees. Pursuant to this program, the City contributes a fixed sum of money per year toward employee medical benefits in which employees have the option to receive an unused portion of their monthly benefit allowance as income in their paycheck.  This cash value is subject to federal and state withholding taxes, Medicare taxes, and garnishment.  The City has not included the cash out value of this medical benefit in the regular rate of pay since 2007. (JSUF, Doc. 27-2 ¶ 4; Doc. 28-3, ¶ 3).

7.   Less than 20% of the sworn officers who are employees of the Sanger Police Department are taking cash in lieu of the medical benefits being provided by Defendant as outlined above. *Declaration of Deborah Sultan*, dated Jan. 21, 2015 ("*Sultan Decl.*") at ¶ 7 (Doc. 28-4, pg. 36 at ¶7).

8.   The City requires proof of alternate coverage in order for its sworn officers to take cash in lieu of the medical benefits being provided by Defendant.  *Sultan Decl.*, at ¶ 8 (Doc. 28-4, pg. 36 at ¶7).

9.   The City allows Plaintiffs to accrue compensatory time pursuant to the FLSA.  Comp time is accrued overtime that is stored and either cashed out or utilized as time off.  When the City cashes out comp time, it did not, until August 23, 2014, include merit pay in the regular rate.  The City also does not include the cash out value of the medical benefit when cashing out comp time. (JSUF, Doc. 27-2, pg. 3 ¶ 4).

10.  With regard to Hours of Work, Article 10 ¶ 3(b) and (c) of the MOU in relevant section states as follows:

**b. 14 day period**

During each 14-day pay period, an employee will work 6-12 hour shifts and 1-8 hour shift for a total of 80 hours of paid time …

///

6

**c. Work Week**

One week will consist of 3 working days (12 hours) with 3 days off.  The second week will consist of 3 full working days (12 hours) and 1 short working day of (8 hours) followed by 4 days off. This pattern will continue in each 14 day period.  Any other hours worked during that pay period will be compensated as overtime or comp time, unless a schedule adjustment has been previously approved by the Watch Commander and employee. (Doc. 28-4, pg. 10; Doc. 32-2, pg. 10).

11. Given the above, Plaintiffs work 36 hours one week (3, 12 hour shifts), and 44 hours the next week (3, 12 hour shifts and 1, 8 hours shift).  Consequently, every other week, each of the plaintiffs working patrol shifts work 4 hours above 40, or 44 hours in that one week period. (Doc. 32-1, pg. 7 at ¶ 11).

12. All sworn officers for the City of Sanger have been paid 1 1/2 times their regular rate of pay for all hours worked over 80 in a 14 day period since 2007.  Sultan *Decl.,* at ¶ 6 (Doc. 28-4, pg. 36).

13. On October 16, 2013, Plaintiffs' counsel wrote a letter advising the City of its alleged miscalculation of overtime including failing to include merit raises and improperly cashing out accrued compensatory time off. (Doc. 32-2, pg. 30).

**V.   Summary of the Court's Decision**

For the reasons set forth below, the Court finds the following:

• Defendant's payments to Plaintiffs made in lieu of health benefits are not excludable under 29 U.S.C. §§ 207(e)(2) and 207(e)(4) from the regular rate of pay calculation;

• Merit raises given pursuant to the MOU are not excludable pursuant to 29 U.S.C. § 207(e)(3) from the regular rate of pay calculation;

• Defendant is liable to Plaintiffs for FLSA overtime only to the extent that Plaintiffs worked in excess of 86 hours in a 14-day work period since Defendant implemented an overtime exemption, pursuant to section 29 U.S.C. § 207(k);

• Defendant's FLSA's violations for failing to include health benefit reimbursements in the regular rate of pay calculation *were no*t willful and are governed by a two-year statute of limitations under 29 U.S.C. § 255(a);

• Defendant's FLSA's violations regarding the failure to include merits raises in the regular pay calculation *were* willful  and are governed by a three-year statute of limitations under 29 U.S.C. § 255(a);

• Plaintiffs are entitled to liquidated damages pursuant to 29 U.S.C. § 216(b) for the merit pay claims, but not for payments made in lieu of health benefits claims; and

7

• Any offsets for payment of overtime shall be calculated pursuant to a two-week pay period rather than on a work-week by work-week basis.

**VI.     Legal Analysis**

   *A.  The Health Benefit Reimbursement Program*

The FLSA requires employers to pay their non-exempt employees overtime for hours worked in excess of forty hours in a workweek at a rate that is at least one-and-a-half times the employee's "regular rate." 29 U.S.C. § 207(a)(1). The "regular rate" must account for "all remuneration," which includes compensation that is "not directly attributable to any particular hours of work." 29 U.S.C. § 207(e); 29 C.F.R. § 778.224.

Applying these definitions, Plaintiffs contend that monthly cash benefits received for reimbursement for opting-out of the health benefit plan is remuneration and should be included in the regular rate of pay.  As noted above, Defendant argues that payments made in lieu of benefits to employees are exempted under 29 U.S.C. § 207(e)(2) and 29 U.S.C. § 207(e)(4).

Under the FLSA, an employer bears the burden to show that a particular exemption applies. *Idaho Sheet Metal Workers, Inc. v. Wirtz*, 383 U.S. 190, 206 (1996) (holding that the employer has the burden of proving that compensation falls within an exemption to the regular rate).   Importantly, the Ninth Circuit has held that the exemptions under the FLSA must be "narrowly construed." *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005) ("The FLSA is construed liberally in favor of employees; exemptions are to be narrowly construed against the employers seeking to assert them[.]"); *Klem v. County of Santa Clara, California*, 208 F.3d 1085, 1089 (9th Cir. 2000) ("FLSA exemptions are to be narrowly construed against … employers' and are to be withheld except as to persons 'plainly and unmistakably within their terms and spirit.'") (internal citations and quotations omitted).

The issue presented is whether Defendant has sufficiently established the section 207(e)(2) and (e)(4) exemptions.  The City contends that these exemptions clearly apply. Plaintiffs argue that the

Defendant's reliance on the exemptions is misplaced. A review of the pleadings reveals that the City

has not met its burden under either section.

29 U.S.C. § 207(e)(2) Exemption

The FLSA provides that some types of compensation are excluded from the regular rate of pay:

> payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; *and other similar payments to an employee which are not made as compensation for his hours of employment*[.] 29 U.S.C. § 207(e)(2) (emphasis added).

Defendant argues that the health benefit reimbursement should be exempt under the last clause

of 29 U.S.C. § 207(e)(2) - *and other similar payments to an employee which are not made as*

*compensation for his hours of employment* - because this cash reimbursement is not tied to hours

actually worked.  Therefore, as Defendant argues, the reimbursement is not compensation for the

workers' hours of employment.  Plaintiffs argue that this reimbursement is compensation because the

payment is a benefit which is directly tied to the workers' employment.

The Ninth Circuit has not specifically addressed the issue of whether payments made in lieu of

medical benefits should be included in the regular rate of pay.  In support of their position, however,

Plaintiffs rely on *Flores v. City of San Gabriel*, 969 F. Supp. 2d 1158 (C.D. Cal., Aug. 29, 2013).  In

*Flores*, the district court evaluated a plan similar to the one presented in this case, and held that

exemptions relied upon by the City here, sections 207(e)(2) and (e)(4), did not apply to cash

reimbursements for health benefits. *Id*.  In evaluating section 207(e)(2), the Court found it significant

that the payments were made when work was performed and the compensation was subject to taxes.

*Id*. at 1169-1171.

In reaching this conclusion, the *Flores* court relied on *Local 246 Util. Workers Union of Am. v.*

*S. Cal. Edison Co.,* 83 F. 3d 292, 294 (9th Cir. 1996) ("*Local 246*") which addressed whether

supplemental payments, designed to bring the wage of a partially disabled worker up to his or pre-disability wage level, should be included in regular and overtime pay computations.  *Id*. at 1169-1170.  Similar to the Defendant in this case, the employer in *Local 246* argued that supplemental payments were not compensation for hours worked since payments were not tied to specific working hours.  In holding that supplemental payments failed to qualify under the exemption of "similar payments which are not made as compensation for the employee's hours of employment," the Ninth Circuit reasoned that the payments compensated workers for hours of employment because they supplemented a regular wage paid for work performed. *Id*. at 295.  It made no difference whether the supplemental payments were tied to a regular weekly wage or a regular wage.  *Local* 246, 83 F. 3d at 295 n. 2 (citing *Reich v. Interstate Brands Corp*., 57 F. 3d 574, 577 (7th Cir. 1995) ("Even if payments to employees are not measured by the numbers of hours spent at work, that fact alone does not qualify them for exclusion under section 207(e)(2)")).

Although not directly on point, the reasoning in *Local 246* is instructive.  Under the health benefits reimbursement program, the City contributes a fixed sum of money per year toward employees' medical benefits in which employees have the option to receive an unused portion of their monthly benefit allowance as income in their paycheck.  (UMF, ¶6).  Thus, the benefit is tied to their compensation for hours of employment because the employee must be working to qualify for the health benefits and any reimbursement.   Furthermore, the payments are subject to federal and state withholding taxes, Medicare taxes, and garnishment (UMF, ¶6), which indicates the cash payments are remuneration for work performed and must be included in the regular rate of pay used in calculating overtime.  *See, Retail Indus. Leaders Ass'n v. Fielde*, 475 F. 3d 180, 193 (4th Cir. 2007) ("Healthcare benefits are part of the total package of employee compensation an employer gives in consideration for an employee's service"); *Flores*, 969 F. Supp. 2d  at 1169 ("Since employees receive these payments periodically and the payment are subject to taxes, they are remuneration for work performed

10

and therefore must be included in the regular rate of pay used in calculating overtime.")

The Court is not persuaded by Defendant's argument that this case is similar to *Ballaris v. Wacker Siltronic Corp.*, 370 F. 3d 901 (9th Cir. 2004).   In *Ballaris*, the Ninth Circuit held that an employer properly excluded compensation received for a lunch period from the regular rate of pay calculation.   The Court reasoned that payments for lunch periods constituted an additional benefit to employees and was not compensation for hours actually worked.   *Id*. at 909.   However, *Ballaris* is distinguishable because the *Ballaris* Court relied on regulations which specifically eliminated the presumption in favor of including payments for meal periods in the regular rate of pay, as long as the parties have agreed to exclude such activities from the hours worked.   *Id*. at 909 citing 29 C.F.R. § 778.320.   Regulations pertaining to meal exclusion are not relevant in this case, so the reasoning in *Ballaris* is not persuasive.

The Court similarly is not persuaded by the Defendant's reliance on *Minizza v. Stone Container Corp., Corrugated Container Div*., 842 F. 2d 1456 (3rd Cir. 1998).   In *Minizza*, the Court found that two lump-sum payments made pursuant to a collective bargaining agreement that was negotiated as a trade-off for wage increases and served as an incentive for the employees to ratify the agreement was exempt under 207(e) (2).   *Id*. at 1458.   To be eligible to receive the payment, employees had to have been active employees for three or six months prior to the date of the payment. *Id*.   The Court reasoned that the 207(e) (2) exemption applied because the payment was "nothing more or less than an inducement by the employers to the employees to ratify the agreement on the terms proposed by the employers."   *Id*. at 1462.   In doing so, the Court noted that eligibility for the payment was not contingent on the number of hours worked during that period, or how many hours one might work in the future.   Rather, employees only needed to show that they worked during a certain period of time prior to receiving the payment.   *Id*. at 1461.   Thus, the payment was not compensation for hours worked or services rendered.   *Id*. at 1462.

11

Here, unlike *Minizza*, Plaintiffs must be working in order to qualify for the health benefit reimbursement so the payment is tied to the employees' hours of work.  The plain language of 207(e) requires that all remuneration for employment be included in the regular pay.  Since the payment is based on employment, the City has not met its burden that section 207(e)(2) exemption applies.

### 29 U.S.C. § 207(e)(4) Exemption

The City also contends that the health benefit compensation is exempted from regular pay under § 207(e)(4) which excludes from "regular rate" any "contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees." 29 U.S.C. § 207(e)(4).  Plaintiffs argue that this provision clearly does not apply because the health care reimbursements are made directly to the Plaintiffs rather than a trustee or third person. In reply, the City asserts that pursuant to the regulations, a plan may still be considered a bona fide plan under Section 207(a)(4), even where the plan provides for partial payout in cash to an employee on all or part of the amount standing to the employee's credit. 29 C.F.R. § 778.215(a)(5).

A close reading of the relevant regulation reveals that Defendant's reasoning is misplaced. Pursuant to 29 C.F.R. § 778.215(a), a plan is bona fide when :

(1) Contributions are made pursuant to a specific plan adopted by the employer;

(2) The primary purpose of the plan is to provide systematically for the payment to employees of benefits for death, disability, retirement, and health expenses;

(3) *the benefit must be specified or definitively determinable on an actuarial basis, or there must be a formula (as set forth in 29 C.F.R. § (3)(i) – 3(v)) for determining the amount of contributions by the employer and the employee*;

(4) The employer's contributions must be irrevocably paid to a trustee or a third person pursuant to an insurance agreement, trust or other funded arrangement; and

(5) "The plan must not give an employee the right to assign his benefits under the plan nor the option to receive any part of the employer's contributions in cash instead of the benefits under the plan: Provided, however, [t]hat if a plan otherwise qualified as a bona fide benefit plan

under section 7(e)(4) of the Act, it will still be regarded as a bona fide plan even though it provides, as an incidental part thereof, for the payment to an employee in cash of all or a part of the amount standing to his credit … *(iii) during the course of his employment under circumstances specified in the plan and not inconsistent with the general purposes of the plan to provide the benefits described in section 7(e)(4) of the Act.*

29 C.F.R. § 778.215(a) (Emphasis added).

Here, the only relevant evidence that the Defendant has presented regarding the plan is that the City contributes a fixed sum of money per year toward employee medical benefits and that employees have the option to receive an unused portion of their monthly benefit allowance as income in their paycheck. (UMF, ¶6).  Additionally, it is undisputed that the City requires proof of alternate coverage in order for the officers to take cash in lieu of the medical benefits being provided by the Defendant. (UMF, ¶¶ 7 & 8) (Doc. 28-4, pg. 36).

These facts do not meet the regulatory criteria for two reasons.  First, while a program may still qualify as a bona fide program even if employees receive payments during their employment under 29 C.F.R. § 778.215(a)(5), pursuant to (iii) of that section, the payments must be made *under circumstances specified under the plan*. (Emphasis added).  No specific information about the plan has been presented, so the Court is unable to determine if this requirement has been met.  Furthermore, the lack of information presented prevents that Court from assessing whether the plan complies with 29 C.F.R. § 778.215(a)(3)(i-iv) that sets forth the formulaic requirements that must be established in order for this exemption to apply. Therefore, the City has not met its burden that the health benefit reimbursements should be excluded from the regular rate of pay under 207(e)(4).

Defendant urges the Court to consider an advisory opinion letter from the U.S. Department of Labor issued in 2003.  The letter provides that a cafeteria health plan may qualify as a bona fide benefits plan for purposes of section 207(e)(4) if: "(1) no more than 20% of the employer's contribution is paid out in cash; and (2) the cash is paid under circumstances that are consistent with the plan's overall primary purpose of providing benefits." Dep't of Labor Op. Letter, 2003 WL

23374600 (July 2, 2003). The letter indicates that a plan *may* qualify as long as 20% of the employer's total contribution is paid out in cash as opposed to looking at each worker's plan individually. *Id.* However, this letter was written in response to a case where specific information about the plan itself was provided, and gave guidance where the requirements of the plan regarding employer contribution rates and reimbursement policies were outlined.  Although it is undisputed here that less than 20% of the sworn officers who received this benefit are taking cash in lieu of the medical benefits (UMF, ¶7), none of the other necessary facts regarding the program have been presented.  A narrow construction of FLSA exemptions precludes the Court from finding that the City has met its burden in establishing that the Section 207(e)(4) exemption applies under these circumstances.  Accordingly, the cash reimbursement in lieu of health benefits must be included in the regular rate of pay calculation.

### B. *Merit Pay*

Plaintiffs contend that Defendant fails to include merit pay raises in the employee's regular rate of pay. Plaintiff argues that merit pay should be included in the regular rate of pay because this five percent increase falls squarely within the definition of regular pay pursuant to section 207(e). Defendant contends that because merit pay is discretionary, it is excludable from the regular pay calculation pursuant to 29 U.S.C. § 207(e)(3) and 29 C.F.R. § 778.211.  Again, a close reading of the relevant provisions reveals that the City's arguments are not persuasive.

 29 C.F.R. § 778.211, in relevant part, provides as follows:

*Discretionary Bonuses*

(a)  Statutory provision. Section 7(e)(3)(a) of the Act provides that the regular rate shall not be deemed to include "sums paid in recognition of services performed during a given period if … (a) both the fact that payment is to be made and the amount of the payment *are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly* …". Such sums may not, however, be credited toward overtime compensation due under the Act …
29 C.F.R. § 778.211(a) (emphasis added).

14

This regulation requires that: (1) the raises are discretionary, (2) the determination of whether the payment is made and the amount paid occurs at the end of the period, and (3) the bonus is not given pursuant to a prior contract or agreement.

The City has not provided much information regarding how the merit raises are specifically awarded other than what is outlined in Article 13 of the MOU.  This section provides that merit increases can be applied at any step within the range, at *any time* as determined by the Chief of Police, and are renewed annually upon the recommendation of the Police Chief for satisfactorily meeting the eligibility requirements for such increases. (UMF, ¶ 5).  The MOU also indicates that a committee is established by the Chief of Police, with the approval of the City Manager, to develop criteria which will be utilized for determining eligibility for merit increases. (UMF, ¶ 5).

Other than this information, no evidence has been presented regarding the eligibility criteria of this program.  Without additional facts, the Court is unable to determine whether the merit incentive is truly discretionary or merely perfunctory.  For example, it is unclear what "satisfactorily meeting the eligibility requirements" means.  The timing of the when the evaluation occurs is also ambiguous since the MOU states that the increases can be applied "at any time."  Even assuming this information was provided, the Defendant's argument still proves difficult because the regulation provides that the exclusion would not apply to raises awarded pursuant to a prior contract or agreement. 29 C.F.R. § 778.211(a).  Here, the bonuses stem from the contractual provisions of the MOU.  Given these circumstances, the City has not established that the merit pay is excludable from the regular rate of pay pursuant to section 207(e)(3).

///

///

*C. A 207(k) Exemption Exists*[3]

The City argues that to the extent that the Court finds they are liable for any of the alleged

violations, it has established a police officer exemption pursuant to 29 U.S.C. § 207(k), and any

damages should be offset by this exemption.  Under 29 U.S.C. § 207(k), a public entity may adopt a

work period other than a 7-day work period for certain employees including police officers.  If the

entity adopts a different work period, the threshold for payment of overtime is calculated in

accordance with the number of days the entity selects as a work period. 29 C.F.R. § 553.230.

Defendant contends that the MOU established a 14-day work period and therefore the City is only

required to pay overtime for all hours worked in excess of 86 hours in a 14-day period pursuant to

Department of Labor ("DOL") regulations.  29 C.F.R. § 553.230. Plaintiffs argue no exemption

applies and therefore, they are entitled to overtime for any hours worked over 40 hours in a one week

period.

Here, there is no dispute that Defendant is eligible for a section 7(k) exemption; the question is

whether the City in fact adopted this exemption.  Defendant relies on *Adair v. City of Kirkland*, 185 F.

3d 1055 (9th Cir. 1999), which held that an employer is not required to make a public pronouncement

in order to establish a 207(k) exemption. *Id*. at 1060.  Instead, the Court found that the City of

Kirkland had established a § 207(k) exemption based on a statement in a collective bargaining

agreement ("CBA"), which provided that "[f]or purposes of complying with the Fair Labor Standards

Act, the Patrol Division work period shall be eight days and the Detective Division seven days." *Id*.

The Court also found that beyond the language in the CBA, the City established a § 207(k) exemption

by actually following the work period in practice. *Id*. "Together with the City's affirmative statement

---

[3] This exemption only applies to the Plaintiff police officers and does not apply to Plaintiff Richard B. Franco because Franco is employed as a non-sworn records clerk and is not a police officer.

that it was establishing a [§ 207(k) ] exemption, the regularly recurring work period shows that the City established a [§ 207(k) ] exemption." *Id*.

The City bears the burden of showing that it qualifies for a section 7(k) exemption. *Id*. at 1060. "Whether an employer adopted a Section 7(k) exemption is an ultimate fact that may be decided on summary judgment if the underlying specific facts are undisputed." *Adair*, 185 F.3d at 1060 ("Whether an employer meets this burden is normally a question of fact."); *Flores*, 969 F.Supp.2d at 1178 citing *Farris v. Cnty. Of Riverside*, 667 F. Supp. 2d 1151, 1157 (C.D. Cal., Oct. 20, 2009).

Here, the language of the MOU establishes a 7(k) exemption.  The parties negotiated how overtime would be paid, and the parties have been operating under a 14-day recurring work period for over seven years.  For example, Article 10 of the MOU provides that each 14-day work period shall consist of six 12 hour shifts and one 8 hour shift for a total of 80 hours. (UMF, UMF, ¶ 10). Specifically, one week consists of 3 full working days of 12 hours and three days off. *Id*. The second week consists of 3 full working days of 12 hours and 1 short working day (8 hours). *Id*.  Moreover, Article 10 explains the work pattern over a 14-day period and then states, "[t]his pattern will continue in each 14 day pay period." *Id*. The MOU further outlines that "[a]ny other hours worked during that pay period will be compensated at overtime or comp time, unless a schedule adjustment has previously been approved…." *Id*. Thus, the MOU contemplates a 80 hour-a-week work schedule that repeats over a 14-day period with overtime paid for any other hours worked in that 14-day pay period.  It is undisputed that this practice has been implemented since 2007.  (UMF, ¶ 12).

Plaintiffs argue that *Adair* is distinguishable from the facts presented here because unlike in *Adair*, the MOU does not make reference to the FLSA or a 207 (k) exemption, and no other documentation exists establishing an exemption.  Plaintiffs further argue that the City failed to comply with 29 C.F.R. § 553.51 which requires that the employer notate the work period for each employee

17

on the payroll records. Instead of establishing a 207(k) exemption, Plaintiffs contend that that MOU merely sets out a two-week pay period that outlines how overtime is calculated.[4]  The fact that the agreement allows for reimbursement of overtime for any hours worked over 80, as opposed to 86 hours, as provided for under the DOL regulations, demonstrates that no 207(k) exemption was created.[5]

     The Court disagrees.  In *Adair*, the Ninth Circuit found that an exemption existed when no other external documentation or formal proclamation other than the CBA was present.  *Adair*, 185 F. 3d at 1160-1162.  Moreover, the *Adair* court concluded that the CBA met the requirements of §553.51, and any deviation from the regulations based on a City's record-keeping practices is insignificant.  *Id*. at 1062 n. 5 ("Although the plaintiffs are correct insofar as they assert that some employers have gone to great lengths to comply with § 553.51, they have not cited any case law supporting their argument that a 7(k) work period cannot be established unless the proper records are kept.").  Similarly, the City's implementation of a more generous overtime policy than the one set forth in section 207(k) does not negate its adoption of the 7(k) exemption.  *Flores*, 969 F. Supp. at 1178 citing *Lamon v. City of Shawnee, Kan*., 972 F.2d 1145, 1154 (10th Cir.1992) ("There is no basis for concluding that, once an employer has opted for the subsection (k) framework, the employer may only pay overtime for hours worked beyond the legal maximum permitted at the regular wage.").

---

[4] Plaintiffs also argue that this case is similar to *Mitchell v. County of Monterey*, 2011 WL 7479161 (N.D. Cal., May 12, 2011) in which the court found that a 7(k) exemption did not exist.  In *Mitchell*, the Defendant relied on a personnel policy stating that overtime in the Sheriff's Department was defined as time worked in excess of 80 hours in a two-week pay period. *Mitchell v. County of Monterey*, 2011 WL 7479161 at *6. This Court does not find this case persuasive, however, because in *Mitchell*, Plaintiffs presented evidence that this overtime policy was not agreed to by the police officers association and there was no evidence that the practice was ever implemented. *Id*., at *6-7. Here, there is a MOU and officers were paid consistent with the negotiated agreement for seven years.

[5] Plaintiffs argue that the MOU "pay period" does not equate to the "work period" required for a 7K exemption. (Doc. 32-1, Fact 5: "the MOU says nothing about 'work periods,' but rather simply addresses ordinary pay periods.")  Under the facts in this case, the pay period is the work period.  The MOU established the 80-hour work pattern followed by both parties, which is permitted by 7k to balance the hours of work over an entire work period.

The Court recognizes that in this instance, the relevant article in the MOU does not explicitly reference the term 7(k). However, the 14-day work period is defined and a recurrent work period has been consistently implemented since 2007. (UMF, ¶12). These facts are sufficient to establish the exemption under controlling Ninth Circuit authority. [6]

Finally, the Court recognizes that in *Adair*, the officers did not contest that the purpose of the language in the CBA was to establish a § 207(k) exemption. *Adair,* 185 F.3d at 1061. In this case, the officers are challenging the language of the MOU. The Court has reviewed the Declaration of Kevin Callahan, one of the Plaintiffs who has been a member of the Police Association since 2005, was President of the Board from 2008-2009, and has held an Executive Board position of President since 2012. (Doc. 27-4, pgs. 49-51,¶ 6). Mr. Callahan states he has never negotiated, discussed, or had any conversation with anyone from the City about enacting or implementing a 207(k) work period. *Id.*

The Court finds this declaration does not create a disputed material fact. There is no indication that Mr. Callahan was the President of the Board at the time the MOU was written, or that he was involved in any of the negotiations resulting in the creation of the MOU. Here, as explained above, Article 10 of the MOU contractually establishes the 207(k) exemption because it is the result of negotiations between the City and the Police Association setting an 80-hour period after which overtime would be paid. This article sets forth the recurring fourteen day work period and has governed how overtime has been paid for years. Not only does the declaration lack foundation, but it also contradicts the MOU's written terms, which is not permitted by the parole evidence rule. *See, e.g.*, *Wagner v. Columbia Pictures Industries, Inc.*, 146 Cal. App. 4th 586, 52 Cal. Rptr. 3d 898, 903 (2007) (rejecting evidence that contradicted, rather than explained, a written agreement by stating "[t]he

---

[6] Paragraphs 11 and 17 of Article 10 of the MOU references 7(k) and provides that if the MOU is modified, the 7(k) exemption would apply. (Doc. 28-4, pgs. 9-10). Each party has made arguments that the existence of these provisions supports their respective positions. Given the Court's determination that the language in Article 10 (3) (b) and (c), coupled with the recurrent implementation of a 14-day work period establishes a 7(k) exemption, the references to the 7(k) exemption in paragraphs 11 and 17 do not change the Court's interpretation.

problem with [the plaintiff's] extrinsic evidence is that it does not explain the contract language, it contradicts it."); *Cachil Dehe Band of Wintun Indians of Colusa Indian Community v. California*, 618 F.3d 1066, 1073 (9th Cir. 2010) (The interpretation of a contract is a judicial function).

Since a 207(k) exemption was established based on a 14-day recurring work period, the City is only required to pay overtime for hours worked in excess of 86 hours under the Regulations. 29 C.F.R. § 553.230(b) (" … [N]o overtime compensation is required under 7(k) until the number of hours worked exceeds the number of hours which bears the same relationship to 171 as the number of days in the work period bears to 28"). The Court is aware that the MOU contemplates an 80 hour work period; however, "the fact that the parties agreed to more overtime has no bearing on which overtime floor applies under the FLSA. Put another way, Defendants did not waive the advantages of the § 207(k) exemption by entering into the MOU." *Siegmund v. County of Orange*, 461 Fed. Appx. 639, 641 (9th Cir. 2011) (this unpublished case is citable pursuant to FRAP 32.1); *See also*, *Birdwell v. City of Gadsden*, 970 F. 2d 806 (11th Cir. 1992) ("…[P]arties cannot contract out of the Act … the question of contract or agreement is not relevant to whether the FLSA covers a given situation"); *Lamon*, 972 F.2d at 1154 (Affirming a 7(k) exemption and stating "[t]he City chose to continue paying overtime starting at a lower threshold, a state of affairs which inured to Plaintiffs' benefit and which was the City's prerogative to devise."). The regulations require that the overtime floor is 86 hours. Even though the MOU contemplates an 80 hour work period, Defendant cannot waive the advantages of the FLSA by agreeing to pay more overtime in the MOU. Accordingly, Defendant is liable to Plaintiffs for FLSA overtime on the claims presented in this case only to the extent that Plaintiffs worked in excess of 86 hours in a 14-day work period.[7]

---

[7] The Court has grappled with the incongruity between the MOU's term, which compensates workers with overtime pay for any work performed over 80 hours, and the 86 hour requirement set forth in the regulation. The Court is cognizant of the conundrum created by giving the City a greater benefit than what was contemplated and expressly stated in the

D.      *Statute of Limitations*

Under the FLSA, plaintiffs can recover for unlawfully withheld overtime pay for two years back from the filing date of a cause of action. *Haro v. City of Los Angeles*, 745 F.3d 1249, 1258 (9th Cir. 2014) citing 29 U.S.C. § 255(a). When a violation is "willful," however, the statute of limitations extends to three years. *Id*. To show willfulness, a plaintiff must demonstrate that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  An employer who knows of a risk that its conduct is contrary to law, yet disregards that risk, acts willfully.  *Alvarez v. IBP, Inc*., 339 F.3d 894, 908–09 (9th Cir. 2003). The employer must take "affirmative action to assure compliance[.]" *Id*. at 909.

Here, Defendant's violation of the FLSA regarding the health benefit reimbursement was not willful.  As previously discussed, the Ninth Circuit has not addressed the issue of whether cash payments made in lieu of health benefits is excludable under section 207(e)(2) or 207(e)(4). Moreover, the statutory and regulatory language in these sections is ambiguous.  Given the lack of established published case law on this issue, the Court concludes that Defendant's violation was not willful.  Therefore, the two-year statute of limitations under 29 U.S.C. § 255(a) applies to the health benefits claim. *See Reich v. Gateway Press, Inc.*, 13 F.3d 685, 703 (3rd Cir.1994) (upholding the district court's conclusion that actions were not willful since the case presented "close questions of law and fact" and "a case of first impression with respect to one of the governing exemptions").

However, the Court finds that the City's violations with regard to the merit pay claims were willful as it is clear that discretionary bonuses arising out of a collective bargaining agreement would not qualify for an exemption under section 207(a)(3).  Further, it is undisputed that Plaintiffs contacted

---

negotiated agreement.  However, the Court must follow Ninth Circuit precedent, the FLSA, and cases interpreting the FLSA and cannot modify the 86 hour floor.

the City regarding this violation in October 2013, and the City did not take action until August 2014, and only incorporated the merit pay increases into the Plaintiffs' regular rate of pay proactively. Accordingly, a three-year statute of limitation applies to this violation.

> D.   *Liquidated Damages*

"An employer who violates the law is liable not only for unpaid overtime compensation but also in an additional equal amount as liquidated damages." *Chao v. A-One Medical Services, Inc.*, 346 F.3d at 919–920 quoting 29 U.S.C. § 216(b).  "These liquidated damages represent compensation, and not a penalty." *Chao*, 346 F. 3d at 920 quoting *Local 246*, 83 F. 3d at 292.   Double damages are the norm; single damages are the exception. *Chao*, 346 F.3d at 920. Liquidated damages are "mandatory" unless the employer can overcome the "difficult" burden of proving both subjective "good faith" and objectively "reasonable grounds" for believing that it was not violating the FLSA. A finding of good faith is plainly inconsistent with a finding of willfulness. *Id*. citing *Bothell v. Phase Metrics, Inc*., 299 F.3d 1120, 1130 (9th Cir. 2002) (noting the contrapositive, that a finding of good faith precludes a finding of willfulness).

The Court's finding of willfulness under § 255(a) related to the merit pay claims also establishes a lack of good faith or reasonable grounds under § 216(b).   Accordingly, Plaintiffs are entitled to liquidated damages for that claim.  Conversely, given the lack of clarity in the law regarding the payments received in lieu of health benefits, the Court finds the City acted in good faith regarding this claim and liquidated damages shall not be awarded.

> E.   *Offsets for Overpayments of Overtime*

Under the FLSA, 29 U.S.C. § 207(h)(2), an employer may credit overtime payments already made to employees against overtime payments owed to them under the FLSA. The statute, however, does not specify the method to be used to calculate these overtime payments. The statute simply states that "[e]xtra compensation ... shall be creditable toward overtime compensation payable pursuant to

this section." 29 U.S.C. § 207(h)(2).  Plaintiffs argue that any damages should be calculated on a work-week by work-week calculation. Defendant argues that since a 207(k) exemption was established, any offset should be subject to cumulative offsets, specifically, a two-week pay period.

In *Haro v. City of Los Angeles*, 745 F. 3d at 1259, the Ninth Circuit held that overtime calculations should be formulated on a work-week by work-week basis where employees were subject to a 40 hour work week because a 207(k) exemption did not exist.  However, in this instance, a 207(k) exemption with a 14-day work period has been established.  Since the implementation of the 14-day work period has been recurrent, it is only equitable that any offsets be applied consistent with that schedule.  Accordingly, any offsets for payment of overtime shall be applied pursuant to a two-week pay period instead of on a week-by-week basis.

**VII.    Conclusion**

For the reasons set forth above, both Plaintiffs' and Defendant's Partial Motions for Summary Judgment are GRANTED IN AND DENIED IN PART as set forth in **Section V** of this order.  The Clerk of the Court shall refrain from entering judgment and closing this case until after receiving further direction from the Court.


IT IS SO ORDERED.

Dated:   **May 22, 2015**            ___/s/ *Barbara A. McAuliffe*___
                                                 UNITED STATES MAGISTRATE JUDGE